May it please the Court, Charles Prickett here for the appellant, Gary Voketz, who is because it incorrectly interpreted the Supreme Court's decision in Harris v. Arizona Independent Redistricting Board to mean that the court's decision in Shelby County v. Holder was non-retroactive. Why do you think the district court got Harris wrong? What was wrong about its interpretation? Well, I think retroactivity of Shelby County was not addressed by the court in Harris. It simply affirmed the court's factual findings below. Well, assume implicitly it was. Implicitly, according to the district court, it went against your position. Why do you think the district court was wrong to read the case that way? Because the situation here, it was still open on direct review. In Harris v. Arizona, the districts had gone through the preclearance process and had been granted preclearance. In the city's case, they received a more information letter, then withdrew the decision, which I think it's clear that more information letters do not operate as judgments on the merits. Therefore, because the situation with the city was still open on direct review, retroactivity doctrine does apply. Secondly, retroactivity doctrine is not implicated here because Mr. Vocates is only asking for prospective relief. Under state law, the city of Decatur is still under an affirmative duty to implement the Council Manager Act and must proceed accordingly with its implementation. And their refusal to do so is in violation of their statutory duty under state law. Thank you. Mr. Prickett, would you like an opportunity to discuss the supplemental authority that was cited by the city, the Bethune Hall v. Virginia Board of Education and its effect on the prospective versus their retroactive application of Shelby County? Yes, ma'am. I think those decisions are similar to the court's decision in Harris v. Arizona in that they involved constitutional challenges to already existing districts. And they were seeking to invalidate those districts, which Mr. Vocates is not seeking to do. He does not want to invalidate the current districting scheme. He is simply asking the city of Decatur to implement it. If we reverse the district court and grant the relief you seek, it's certain, is it not, that a Section 2 case will be filed? Excuse me, Your Honor? A Section 2 case will be filed in the district court. The defendants have raised Section 2 defendants. If we reverse the district court and grant the relief you seek, then you have the manager and three council persons in place. There will be a Section 2 lawsuit on the ground that there's vote dilution. Yes, sir. Do you agree with that? I don't disagree with that. You agree that that would happen? It's possible it could happen. The defendants have actually raised a Section 2 defense below. Well, the defendants, no, the defendants say this is why we didn't seek preclearance. Right. They didn't seek preclearance because they didn't want to give the department the information because it would show a Section 2 violation. That's what they have stated. I understand that. But if we grant the relief you seek, I suggest that a Section 2 case will be filed. It will be right back here, won't we? Well, I think if it goes back to the district court, the defendants have raised the Section 2. No, no, no. You don't understand me. Yes, sir. I said if we grant the relief you seek, which is a reversal of the district court and an order directing it to grant you what you want, which means that the city manager's plan will be in effect. Yes, sir. There will be a Section 2 suit filed by somebody. Yes, sir. Right back in the district court with the same problem. Do you agree? Yes, sir. But I don't think they can succeed on their Section 2 case based on the current existing facts with the city of Decatur. What you're saying is you'd want to like a shot to litigate the Section 2. Otherwise, this Section 5 argument in perpetuity means there's nobody to go to to get preclearance anymore. So their argument is nothing can ever happen. You can never go forward unless we clear this obstacle. Correct? Correct. Your argument is that the record hasn't been developed to determine whether there's a dilution case. Yes, sir. All that we have is the possibility of a dilution case. That's correct. And I think if it were to be litigated, it would not succeed. The question becomes whether we can affirm the district court on the ground that there's a likely dilution case on the horizon. A potential dilution case. Yes, sir. Yeah. This case arose out of consent decree, didn't it? There was a consent decree that established the five districts. I understand. A consent decree that challenged an at-large system, did it not? Yes, sir. Under Section 2? Yes, sir. And so pursuant to Gingles, the five districts were drawn. That's correct. Well, were drawn, there was a consent judgment. That's right. Okay. But the situation has changed as such in the city of Decatur that the Gingles factors, were they to be litigated, I think they could not be successfully shown. So, hypothetically, were that case to be brought, we feel that Your argument is that nobody could make out a Section 2 violation under the new plan. Correct. Okay. And were this court to consider the district court's interpretation of Harris v. Arizona to be correct and for it to provide a safe harbor for districts drawn prior to Shelby County, it should not apply here because we were not given the opportunity to discover the actual reasons the city chose to withdraw the plan. We feel that they were not legitimate reasons based on the city's concern with potential pre-clearance issues, but instead were based on political considerations regarding the preservation of existing political relationship. City Council didn't like the new plan, in other words. Yes, ma'am. They were not a fan of it and they were given several opportunities. It was going to mess up some people's seats, correct? We suspect that was the case. We were not given the opportunity to go into that. Necessarily would. I mean, you've got now two at large and three individuals. Necessarily, if you're going from a five-member plan to essentially a three-member plan. Yes, ma'am. Two people would lose their seats if they were not capable of winning an at-large election. So, without that opportunity to demonstrate, were Harris v. Arizona correct in establishing a safe harbor for voting districts that were implemented or drawn prior to Shelby County? We feel that Mr. Roketz was denied an opportunity to conduct discovery into whether the city had legitimate issues or legitimate considerations to withdraw after the more information letter. And were we given the opportunity to investigate the issue, the situation, political considerations would be shown to override any legitimate considerations the city may have had. So, you also believe that if in effect Shelby County requires a retroactive application, and that is it applies retroactively, that it would be mathematically possible for the city to have three single-member districts with each district containing as nearly an equal number of people as possible? That would not have a retrogressive impact? I mean, that's basically what the council decided. The city represented to the Department of Justice that that was the case, that the districts drawn and within the plan submitted would retain the minority representative in District 1. But you believe if given an opportunity, you would be able to show by way of the 2010 census data that in fact it would be mathematically possible? Potentially, yes, Your Honor, because the way the current population of Decatur is located, that a minority district could be drawn that would allow for the minority representative to be retained in one of the three districts, not at large. In conclusion, Mr. Wilkowitz would ask that this court reverse the district court below and allow implementation of the Council Manager Act in the city of Decatur, Alabama. You've saved some rebuttal. You've saved some rebuttal time. Yes, sir. Your time's up. You've saved some rebuttal time. Okay. Mr. Blacksher. Good morning. May it please the court. I'd like to talk about the important Shelby County Section 5 issue before this court. What Mr. Volketz fails to understand is that Section 5 was about maintaining the status quo and preventing changes. That is to say, if Decatur, as the law says, was covered in 2010 when this Council Manager change was enacted, under Section 5 it could not implement, administer that change unless it got preclearance either from the D.C. District Court or the Department of Justice. If it did not get preclearance, that change could not be enforced. And because Section 5 was not declared unconstitutional, it still is in effect, if that change could not be enforced in 2010, it cannot be enforced today. Now, first of all— That was then and this is now. Let's have a different hypothetical. Right now the City Council is not keen on this change for a variety of reasons, perhaps. But let's assume the City Council had a different point of view. Let's assume the City Council said, you know what? We were barred by enforcing what our citizenry wanted to do with this new manager plan because of the preclearance requirement. But we'd like to follow the law. We'd like to follow that ordinance and we'd like to follow Alabama state law and we don't have to worry about preclearance anymore. Let's go forward. If the City Council decided to do that, there's nobody that could stop them, right? If the City Council did that, it would have to have a new authority to do it. It would have to have a new referendum or a new local statute or something that said, now we want— Well, that may be a question of state law. I don't know what happens, you know, when you've ignored an ordinance for maybe good reasons and then you don't want to. But that's not what we're here for. There's no reason. Let's assume the City Council could go forward with that existing law. They had ignored it before for good reasons, but now the obstacle that required it to be ignored is eliminated. Nobody could, based on federal law, Section 5, stop the City Council from doing that, could they? Yes, but the obstacle has not been removed. The Section 5 obstacle has not been removed by Shelby County. And that's what I would like to discuss if the court would allow me to do so. But of course it has. There's nobody to go to. There's no department to get preclearance anymore of that. So it's been removed, has it not? It has not, Your Honor. That is to say, if I could explain this, this way. I would refer to the case that this court had before it in Augusta, Richmond County, the Howard v. Augusta, Richmond County case where it had an attorney's fee issue. Judge Carnes, I believe you were on that panel. Yes, but, I mean, that was a very different. It was a question whether or not the plaintiffs had to pay attorney's fees because their position was frivolous. I don't think that case addressed directly this situation. Okay. First of all, is there any question based on what the Supreme Court said in Harris v. Arizona,  that at the time before Shelby County, Arizona, Virginia, North Carolina, were subject to, were covered jurisdictions subject to Section 5, and Shelby County has not changed that, which is to say it's not retroactive. It operates prospectively, which means that changes made after Shelby County can no longer be subject to Section 5. That was my question to you. If the city council wanted to go forward with the existing ordinance and say, okay, we don't have to worry, Shelby County, so we don't have to go to preclearance anymore. We've got this statute that's on the book. We're going to go forward with it. I don't see that anybody could stop you based on Section 5 or preclearance. That's correct. There may be state problems, but I don't see it. If nobody could stop you, if it was the decision of the council to go forward, then it looks a little selective that you're arguing, well, because we don't want to do it, we're going to use it as an excuse or a shield, Section 5 preclearance. No, you're correct. If the Decatur City Council decided tomorrow that it would go ahead and enforce, call an election for three districts and appoint a city manager, as I say, attempt to implement the 2010 change, the black citizens of Decatur cannot challenge it under Section 5 of the Voting Rights Act because Decatur is not a covered jurisdiction anymore. They would have to file, as Judge Joe Flatt indicated. They'd have to file a Section 2 suit. A Section 2 suit. Or it may be possible that they could issue, they could litigate the Section 2 issue in the case that's been removed to Judge Kahlon in this case. Because that's what Judge Kahlon said to begin with in his first order. He said, let's forget Section 5. That's a dead letter here. Let's go forward with what really this case is about, the Section 2 challenge. But what this case is about, Judge Carnes, is whether a citizen of Decatur, Mr. Voketz, can get a court, this court or the district court, to order Decatur now to enforce the 2010 change. But again, I don't know about state law, but all that's before us is whether or not Section 5 is an obstacle in the absence of free clearance. That's all we can deal with. You may have a great argument that, look, things have happened. Things have changed. We had an ordinance. We've done some different things. But that's a state law issue that's not before us right now. No, but under the removal clause, the city of Decatur has indicated that it is not enforcing the 2010 change because it could not be enforced. It would have violated Section 5 to enforce it in 2010, and we would continue to violate Section 5. Just agree with me if the council changed its mind and wanted to enforce it, there's really no way they could be stopped under a Section 5 argument. If they wanted to, but they don't want to. Well, then that's a pretty selective use of Section 5, isn't it? No, Your Honor, it's compliance. It's Decatur complying with Section 5. Section 5 is still alive. Well, the council wants it to be alive. If the council doesn't want it to be alive, that's fine and dandy as well. Today, the only way Section 5 issues could come up would be if, A, Congress enacted a new coverage clause, which is not likely, or, B, Decatur or some other political subdivision were bailed in because of a voting rights violation, the district court, and then Section 5 would become applicable. Counsel, isn't the question boiled down to this? The plaintiff filed the lawsuit in state court to enforce the referendum. That was point one, right? That's correct, Your Honor. Okay. You removed the case to the district court under the statute because of the voting rights issue. That's correct. The question now becomes, does it not, whether or not the council's decision not to enforce the ordinance because it would likely not receive preclearance, whether that's an offense to the plaintiff's case. That's it. The question before the court. What Judge Carnes has been properly saying is that if the council tomorrow said we're going to enforce the ordinance, Section 5 doesn't apply. Section 5 applies, but it can't be enforced because we don't have a forum who can enforce it. Well, that's true. I understand that. The difference between whether Section 5 is still valid and whether it can be enforced are separate questions. I understand that. But the basic question is, what prevents the city from enforcing the referendum on a going forward basis? Because you argued in your brief that if the voters pass the referendum today, the city could administer the referendum without regard to Section 5, although understandably it would be subject to Section 2 of the VRA. But why doesn't the same hold true to the voter referendum at issue? Well, the best, again, is the distinction between whether Section 5 is still valid and it justifies the city from not enforcing the 2010 change and whether anybody, if they decide to go ahead with it, would have enforcement authority to enforce Section 5, which they don't now. And here's a good example. In Augusta, Richmond, in 2012, the Georgia Assembly ordered the consolidated government of Augusta, Richmond County to change its election from November to July when the primaries are held in July. The Justice Department objected in 2012, and therefore Augusta went ahead with its city elections in November. After Shelby County came down, the Georgia Assembly made another change. They ordered that the elections be held in May rather than July. Nevertheless, Mr. Howard and other black citizens brought a lawsuit seeking to have Section 5, that Section 5 objection to the 2012 change, enforced. Now, the district court threw it out for the wrong reasons but with the right result. He said that Shelby County operates retroactively and therefore Augusta had no obligation to comply with the Justice Department objection in 2012. But the problem, and he was wrong about that, but the citizens of Augusta did not have a remedy at that point because there had been a subsequent change after Shelby County, and they couldn't find a form. The district court was not a proper form. No form exists for them to enforce a Section 5 claim. That's the opposite situation from what we've got here. We don't, unlike Augusta, Decatur is continuing to comply with its obligations under Section 5. As long as it wants to. As long as it wants to until— If it wants to enforce the ordinance, then it doesn't have to. Until, under state law, a new change is made. That's correct. In which case, it would be a completely new ballgame. As Judge Joe Flatt says, black citizens of Decatur would have to file a Section 2 lawsuit or a constitutional claim of some sort, but they could not in any way rely on Section 5 after the post-Shelby County change was made. A decision by the council now to enforce the 2010 change would itself be a change that we could not— that is, that black citizens could not challenge under Section 5. But as long as the city is complying with that 2010 change, that is, its obligation under Section 5 not to enforce it, Mr. Volketz can't require a court, whether it's state or federal, to order the city to go forward with that obligation. That's the same as saying that Shelby County is retroactive. It's the same result. So that's the difference between Augusta and Decatur. Here, a citizen is trying to force the city to disobey its obligations under Section 5. In Augusta, the city had gone ahead and made a change post-Shelby County. This is a very, very confusing issue. I had a colleague—I was discussing with him. He said, you know, this is either a problem that only a Jesuit or a Talmudic scholar could figure out, just exactly how it works. Because here we had the Supreme Court obviously unwilling to declare Section 5 unconstitutional and create a chaos in which all of the changes that had not been implemented because of Section 5 since 2006 suddenly were invalid and had to be implemented. And the way he got around it, Chief Justice Roberts, was to say, okay, the coverage formula no longer covers anybody going forward. So any changes after June 25, 2013, are free of Section 5 obligations. But there has to be a change. There has to be a change. Now, as you say, Decatur could create its own change, but it can't be forced to do so without an independent change in state law. That's all we're saying. Let us give you an opportunity to address Mr. Voquette's argument with regard to discovery and challenging the legitimate considerations. Right. Well, the motives under a Section 5 scheme, the motives of the state actor, of the political subdivision, are absolutely irrelevant. I mean, Section 5 categorically says that you can't implement this change for any reason unless you get a preclearance from the D.C. court or DOJ. So motives are not an issue. Or the merits of whether it would, in fact, have caused retrogression are not an issue. The fact was it was never precleared because even though the city attorney went ahead and did the submission, it was clearly apparent that they were not going to get preclearance. They had an August 2012 city election coming up. They had to do something. So they withdrew the council manager change, submitted the redistricted mayor-council districts, and got precleared. And I think it could be argued that that preclearance of their mayor-council five districts in 2012 provided the same kind of legal assurance that the Supreme Court said Arizona got in Harris. I'm out of time, Your Honor. Thank you. I think we understand your case. Mr. Prickett. Thank you, Judge. I'd just first like to address that Mr. Blacksher has conceded the fact that were a new referendum passed today that the city would have no obstacle under Section 5 in implementing the referendum. And to that point, I would just say that there's a state law question about whether or not they remain under a duty to implement the referendum. And we would argue that they do, but that's a decision to be made by a different court. And addressing the Augusta Richmond decision, as Mr. Blacksher said, in that case, there was an objection entered. That is not the situation with the city of Decatur here. They could have waited to receive an objection. After receiving the morning information letter, they did not do so. They chose to withdraw without providing any additional information, which we don't know whether they had or not, instead of simply, I guess, waiting it out to see what the Department of Justice would say, which they possibly would have pre-cleared the council manager plan in 2012. We simply don't know. So for those reasons, Augusta Richmond does not seem to be directly applicable here in the issue of non-retroactivity. It's still alive, as the Council Manager Act was still open on direct review for possible pre-clearance at a later date. And he also, Mr. Blacksher also said that plaintiffs under Section 5 no longer have a remedy for its enforcement. Were his argument to be successful today, Mr. Boquets and the other citizens of Decatur would also be left without a remedy for the enforcement of the referendum that occurred in 2010. They would have no venue to have the issues brought up by the city addressed in any form. And a change has occurred. Mr. Boquets brought his lawsuit. It is not up to the city council to decide whether or not it now wants to implement or change to the Council Manager Act. Mr. Boquets has asked them to do so under state law and believes he would be successful in showing that they do have a duty, continuing under state law, to implement the Council Manager Act in the city of Decatur. Now, the city was asked by the Department of Justice whether five districts could be retained under the Council Manager Act. We feel that that's also a live question were the issues, were this case to be returned purely issues of state law.  the way the Council Manager Act is written potentially allows for the retention of five districts just with the council manager in place of the mayor. So I think there are several different questions that have to be, or there are state law questions that have to be answered were this case to be returned below. And we think Mr. Boquets would ultimately be victorious on those questions of state law. So we would ask this court to reverse the district court's grant of summary judgment below for the reasons outlined today in briefs and allow us to proceed with the litigation addressing these issues that need addressing at the lower court level. Thank you, Judge. We'll move to the second case.